### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

**RIDGEFIELD CHRISTIAN SCHOOL, INC.**              **CHAPTER 11**
**FED. ID NO. 71-0739822**                    **CASE NO. 3:15-BK-10029**

### PLAN OF REORGANIZATION FOR DEBTOR PURSUANT
### TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

### May 28, 2015

The Debtor, Ridgefield Christian School, Inc. (the "Debtor") proposes the following Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan") pursuant to 11 U.S.C. § 1121(a) of the Bankruptcy Code.

### ARTICLE I

### DEFINITIONS

As used in the Plan and the Disclosure Statement, the following capitalized terms shall have the respective meanings specified below, unless the context otherwise requires:

**1.1    Administrative Expense(s).**  Any right to payment constituting a cost or expense of administration of the Bankruptcy Case that is entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estate, (b) any actual and necessary costs and expenses of operating the Business expenses or obligations incurred or assumed by the Debtor in Possession during the pendency of the Bankruptcy Case in connection with the conduct of its Business or for the acquisition or lease of property or the rendition of services to any Debtor in Possession, (c) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Section 330 or 503 of the Bankruptcy Code, to the extent incurred prior to the Effective Date, and (d) and any fees or charges assessed against the Estate under Section 1930, Chapter 123, Title 28, United States Code.

**1.2    Affiliate.**  Shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.3    Allowed.**  (a) With respect to a Claim, any Claim or any portion thereof (i) proof of which has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or other applicable bankruptcy law as to which either (x) no objection to the allowance thereof has been filed within the period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or (y) any objection to its allowance has been settled, withdrawn, waived through payment, or denied by a Final Order; or (ii) as to which no proof of Claim has been filed but which has been listed in the Schedules as liquidated in an amount more than zero and not disputed or contingent; or (iii) that is expressly

allowed pursuant to the terms of this Plan or otherwise allowed by a Final Order; or (b) with respect to any Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code, or from the denial or avoidance of an interest in property of the Estate, the value of the money or property so recovered, denied or avoided, as the case may be, if, within 30 days after the judgment for the recovery of money or property, or after the judgment that denied or avoids any such interest, becomes a Final Order, the holder thereof has filed a proof of claim with the Court respecting such Claim and has fully satisfied such judgment; or (c) with respect to an Administrative Expense, any Administrative Expense (i) that requires Bankruptcy Court approval as a precondition to payment, such amount as shall be allowed by a Final Order; or (ii) as to which a timely written request for payment has been made in accordance with any bar date on such requests set by the Bankruptcy Court (if such written request is required), and in each case as to which the Debtor, the Old Debtor or any other party-in-interest (x) has not filed a timely objection or (y) has filed a timely objection and such objection has been settled, withdrawn, waived through payment, or has been denied by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" shall not include interest, penalties or other charges accruing on a Claim from and after the Petition Date.

       **1.4**    **Allowed Bond Claims.** The amount in which the Bonds are Allowed in this Bankruptcy Case.

       **1.5**    **Avoidance Actions.**  Individually and collectively, all avoidance or recovery actions of the Debtor, Debtor in Possession or its Estate under Sections 542, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including, without limitation, fraudulent transfer or conveyance laws, whether or not such actions are pending on the Effective Date or are thereafter asserted or commenced by the Debtor in Possession or the Debtor against any Entity, and whether asserted or unasserted as of the Effective Date.

       **1.6**    **Ballot.**  Each of the ballot form or forms distributed to each holder of an Impaired Claim on which such holder is to indicate acceptance or rejection of the Plan.

       **1.7**    **Bankruptcy Case.**  The case pending in the Bankruptcy Court under chapter 11 of the Bankruptcy Code for the Debtor.

       **1.8**    **Bankruptcy Code.**  The Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

       **1.9**    **Bankruptcy Court.**  The United States Bankruptcy Court for the Eastern District of Arkansas, Jonesboro Division, having jurisdiction over the Bankruptcy Case or any successor court.

       **1.10**    **Bankruptcy Rules.**  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Bankruptcy Case or proceedings therein, and all local rules adopted by the Bankruptcy Court, as applicable to the Bankruptcy Case or proceedings therein, as the case may be.

**1.11    Bond Instrument**.    Each instrument issued to each holder of the Bonds evidencing the indebtedness under the Bonds in the amount set forth thereon.

**1.12    Bond Issuer.** Craighead County Public Facilities Board.

**1.13    Bond Trustee.** First Security Bank, as Trustee for the Bonds.

**1.14    Bonds.** Collectively, the Series 2002A Bonds and the Series 2002B Bonds.

**1.15    Business Day.** Any day other than a Saturday, Sunday or legal holiday set forth in Rule 9006(a) of the Bankruptcy Rules.

**1.16    Calendar Year.** A period of twelve months ending on December 31 of each year.

**1.17    Cash.** Legal tender of the United States.

**1.18    Causes of Action.** Any and all actions, causes of action, causes in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, cross-claims, Avoidance Actions, rights to recovery, rights to legal remedies, rights to equitable remedies, rights to payment, and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, admiralty or equity or otherwise.

**1.19    Claim.** (a) Any right to payment from one or more of the Debtor or against any property of the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from one or more of the Debtor or against any property of the Estate, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown; or (c) any claim against the Estate of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

**1.20    Claimant.** The holder of a Claim.

**1.21    Class**. A category of Claims described in ARTICLE II of the Plan.

**1.22    Collateral.** Any property or interest in property of a Debtor's Estate that is subject to a valid and enforceable Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

**1.23    Confirmation Date.**  The date on which the Confirmation Order is entered on the docket(s) maintained by the clerk of the Bankruptcy Court with respect to the Bankruptcy Case.

**1.24    Confirmation Hearing.**  The hearing on confirmation of the Plan pursuant to Section 1128 of the Bankruptcy Code.

**1.25    Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.26    Creditor.**  Any Entity that holds a Claim against any Debtor that arose or is deemed to have arisen on or before the Petition Date.

**1.27    Debt Service Reserve Fund.**  Shall have the meaning described in the Trust Indenture.

**1.28    Debt Service Reserve Fund Cap.**  Shall mean the lesser of 10% of the outstanding principal on the Bonds or the maximum annual debt service (inclusive of interest, principal, costs and fees) under the Bonds.

**1.29    Debtor.**  Ridgefield Christian School, Inc., a debtor in the Bankruptcy Case.

**1.30    Debtor in Possession.**  The Debtor in its capacity as debtor in possession in the Bankruptcy Case under Sections 1101, 1107 and 1108 of the Bankruptcy Code.

**1.31    Disallowed.**  (a) When used with respect to a Claim, (i) a Claim, or any portion thereof, that is disallowed by a Final Order or which is withdrawn, in whole or in part, by the holder thereof, (ii) a Claim listed by the Debtor in its Schedules at zero or as contingent, disputed, or unliquidated and as to which no proof of Claim is timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, a Final Order, other applicable bankruptcy law, or the Plan, or (iii) a Claim not listed on the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code, the Bankruptcy Rules, a Final Order, other applicable bankruptcy law, or the Plan; or (b) with respect to an Administrative Expense that requires Bankruptcy Court approval as a precondition to payment, such amount as shall be disallowed by Final Order or which is withdrawn, in whole or in part, by the holder thereof.

**1.32    Disclosure Statement.**  The written disclosure statement (including all schedules and exhibits thereto or referenced therein) that relates to the Plan as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as it may be amended, modified, supplemented and restated from time to time.

**1.33    Disputed.**  With respect to a Claim, any such Claim proof of which has been filed with the Bankruptcy Court and (a) which is listed on the Schedules at zero or as unliquidated, disputed or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (b) as to which the Debtor or any other party in interest has filed an objection in accordance with the Bankruptcy Code, the Bankruptcy Rules, and this Plan, which objection has not been settled, withdrawn, waived through payment, or denied by a Final Order.  Prior to (i)

the time an objection is filed and (ii) the expiration of the time within which an objection to such Claim must be filed as established by this Plan or a Final Order, a Claim shall be considered a Disputed Claim to the extent that the amount of such Claim specified in a proof of Claim exceeds the amount of such Claim scheduled by the Debtor as undisputed, non-contingent and liquidated.

**1.34   Distribution.**  The Cash or property to be paid or distributed under the Plan to the holders of Allowed Claims or Allowed Interests on account of Allowed Claims or Allowed Interests.

**1.35   Effective Date.**  At least eleven Business Days after the Confirmation Date that (i) all conditions precedent to the occurrence of the Effective Date have been satisfied and (ii) no stay of the Confirmation Order is in effect.

**1.36   Entity.**  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereof or any other entity.

**1.37   Estate.**  Collectively, the estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of the Debtor's Bankruptcy Case.

**1.38   Final Order.**  An order or judgment that has not been reversed, vacated, stayed, or amended, and is no longer subject to appeal, *certiorari* proceeding or other proceeding for review, re-argument, or rehearing, or as to which no appeal, *certiorari* proceeding or other proceeding for review, re-argument, or rehearing has been requested or is then pending and the time to file any such appeals, *certiorari*, proceeding or other proceeding for review, re-argument, or rehearing has expired, or as to which any right to appeal, petition for *certiorari*, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor; or, in the event that an appeal, writ of *certiorari* or re-argument or rehearing thereof has been sought, such order or judgment shall have been determined by the highest court to which such order or judgment was appealed, or *certiorari*, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari* or move for re-argument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other applicable laws, may be filed with respect to such order or judgment shall not preclude it from being a Final Order.

**1.39   General Unsecured Claim.**  An Allowed Unsecured Claim against the Debtor that is not a Priority Tax Claim, or a Priority Non-Tax Claim.

**1.40   Governmental Unit.**  Shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

**1.41   Impaired.**  With respect to any Claim or Interest, shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

**1.42    Lien.**  Any security interest, charge against, encumbrance upon or other interest in property, the purpose of which is to secure payment of a debt or performance of an obligation.

**1.43    New Bond Documents**. Each of the documents that evidence and/or secure the Bonds as each are now existing and as each may be amended, modified, restated, or substituted in order to effect the terms and conditions of this Plan and the treatment provided herein for the Allowed Bond Claims, including, without limitation, (a) the Trust Indenture, (b) the Loan Agreement by and between the Issuer and the Debtor, dated November 1, 2002, (c) each Promissory Note evidencing the Bonds, each being dated November 1, 2002, (d) the First Mortgage With Security Agreement and Assignment of Rents and Leases (Includes Fixture Filing Under Uniform Commercial Code), dated November 1, 2002, and granted by the Debtor in favor of the Issuer, and which was recorded on November 15, 2002, in the Office of the Circuit Clerk and Ex-Officio Recorder of Craighead County, Arkansas, in Mortgage Book 944, Page 893-924, relating to and encumbering the School Property (separately defined herein as the "**Mortgage**").

**1.44    New Security Documents**.    Shall mean collectively an extension and modification agreement to be executed by the Debtor subsequent to the Confirmation Date but prior to the Effective Date wherein the Mortgage and any other security document that secures the Bonds shall be amended and modified to the extent required under the New Bond Documents.

**1.45    Petition Date.**  January 5, 2015, the date on which the Debtor filed its petition for relief commencing the Bankruptcy Case under Chapter 11 of the Bankruptcy Code.

**1.46    Plan.**  This chapter 11 plan of reorganization (including the Plan Documents and exhibits hereto), as it may be amended, supplemented or otherwise modified from time to time thereafter, and all exhibits and schedules to the foregoing, as the same may be in effect at the time such reference becomes operative.

**1.47    Plan Documents**.  The agreements, documents and instruments to be executed, delivered, filed, recorded, or issued on or after the Confirmation Date or on or after the Effective Date as the case may be and as contemplated by, and in furtherance of, the Plan.

**1.48    Professionals.**  Those Entities and individuals employed pursuant to an order of the Bankruptcy Court under Section 327 or 1103 of the Bankruptcy Code.

**1.49    Schedules.**  The schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they may be amended, supplemented or otherwise modified from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.50    School Property.**  The real and personal property owned by the Debtor and which is described as the "Mortgaged Property" in the Mortgage and which secures the indebtedness and obligations represented and evidenced by the Bonds.

**1.51    Secured Claim.**  An Allowed Claim (other than an Administrative Expense) that is secured by a Lien on Collateral to the extent of the value, as of the Effective Date or such later date as the Bankruptcy Court determines is appropriate, of such Collateral (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtor, or (c) as determined pursuant to a Final Order in accordance with Section 506 of the Bankruptcy Code or, in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

**1.52    Series 2002A Bonds.**  Those certain Craighead County Public Facilities Board Refunding and Capital Improvement Bonds (Ridgefield Christian School, Inc. Project), Series 2002A, Cusip Nos. 224222 AC3, 224222 AD1, 224222 AE9 and 224222 AF6.

**1.53    Series 2002B Bonds.**  Those certain Craighead County Public Facilities Board Refunding and Capital Improvement Bonds (Ridgefield Christian School, Inc. Project), Series 2002B, Cusip No. 224222 AG4.

**1.54    Surplus Revenues.**  Revenues (not including funds raised through fundraising efforts) in excess of (1) the amount required to insure the prompt payment of the principal of, interest on, and Bond Trustee's fees and expenses and administrative charges in connection with the Bonds as the same become due and (2) 1.25 times the normal and ordinary operating expenses of the Debtor, as calculated on a monthly basis and reported to the Bond Trustee.

**1.55    Trust Indenture.**  The Trust Indenture by and between the Bond Issuer and the Bond Trustee, dated November 1, 2002

**1.56    Unimpaired.**  When used with reference to a Claim or Class, means such a Claim or Class that is not an Impaired Claim or Class.

**1.57    Unsecured Claim.**  Any Claim that is not an Administrative Expense or a Bond Claim.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

All Claims, except Administrative Expenses, are placed in the Classes set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses have not been classified.

A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class, and is classified in another Class or Classes to the extent that any portion of the Claim within the description of such other Class or Classes.  A Claim is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.  Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim that is not an Allowed Claim.

The Plan resolves all Claims against the Debtor or property of the Debtor of whatever character, whether Disputed, contingent or unliquidated, or whether Allowed by the Bankruptcy Court pursuant to Section 502(a) of the Bankruptcy Code.

Claims against the Debtor are classified as follows:

**Class 1:**  **Series 2002A Bonds**.  Class 1 consists of the Allowed Claims of the holders of Series 2002A Bonds against the Debtor.  (Impaired – entitled to vote).

**Class 2:**  **Series 2002B Bonds**.  Class 2 consists of the Allowed Claims of the holders of Series 2002B Bonds against the Debtor.  (Impaired – entitled to vote).

**Class 3:**  **General Unsecured Claims Against Debtor**.  Class 3 consists of the Allowed General Unsecured Claims against the Debtor.  (Unimpaired – not entitled to vote).

## ARTICLE III

### TREATMENT OF UNCLASSIFIED ADMINISTRATIVE EXPENSES

**3.1  Administrative Expenses**.  Each holder of an Allowed Administrative Expense shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Administrative Expense, Cash equal to the unpaid portion of such Allowed Administrative Expense on or as soon as reasonably practicable after the date such Administrative Expense becomes an Allowed Administrative Expense; provided, however, Administrative Expenses for professionals hired by the Debtor with approval of the Court are subject to Court approval but shall be paid first from any pre-petition retainer provided to such professionals by the Debtor and then from the monthly revenues of the Debtor after payments due to Allowed Bond Claims during each month following the Effective Date.  The fees of the U.S. Trustee shall also be treated as Administrative Expenses.

## ARTICLE IV

### TREATMENT OF ALLOWED CLAIMS

The Classes of Claims shall receive the treatment described herein, which treatment shall be in full and complete satisfaction, settlement, release, discharge of, and in exchange for all such Claims.  Following the entry of the Confirmation Order, the rights of all Creditors shall be limited exclusively to the specific benefits made available and set forth in the Plan.

**4.1  Treatment of Class 1 Claims (Allowed Series 2002A Bonds)**.  Each holder of an Allowed Series 2002A Bond shall have its Bond Claim Allowed in an amount equal to all of its respective unpaid principal and accrued but unpaid interest, which in the aggregate for all Allowed Series 2002A Bonds is in the amount of $1,918,840.00.  The Allowed Series 2002A Bonds shall be paid pursuant to the terms and conditions of the New Bond Documents which

shall be amended and modified, to the extent necessary, to reflect the following terms of repayment:

a.   Months 1-36, interest on the Allowed Series 2002A Bonds shall accrue at the rate of 2% and be paid by the Debtor to the Bond Trustee on a monthly basis, which the Bond Trustee shall remit to the third party responsible for distributing payments under the Bonds to the holders thereof on a semi-annual basis.

b.   Months 37 through May 1, 2039, interest on the Allowed Series 2002A Bonds shall accrue at the rate of 3% and the Debtor shall make monthly payments to the Bond Trustee, which the Bond Trustee shall remit to the third party responsible for distributing payments under the Bonds to the holders thereof on a semi-annual basis, of accrued but unpaid interest and principal (the principal on the Effective Date being equivalent to the amount of the Allowed Series 2002A Bonds) shall be amortized such that the Allowed Series 2002A Bonds shall be fully repaid by maturity, such monthly payments to the Bond Trustee being in the amount of $10,243.27.

c.   The Surplus Revenues of the Debtor shall be used to first replenish the Debt Service Reserve Fund to an amount equal to the Debt Service Reserve Fund Cap, which such Debt Service Reserve Fund shall continue to be governed by and made subject to the terms and conditions of the New Bond Documents.  Upon the funding of the Debt Service Reserve Fund in an amount equal to the Debt Service Reserve Fund Cap, the Surplus Revenues shall be used to redeem the Allowed Series 2002A Bonds, in whole or in part, at a redemption price equal to the principal amount being redeemed plus accrued interest to the redemption date.

The Allowed Series 2002A Bonds shall retain the pre-petition liens and security interests securing the Allowed Series 2002A Bonds as set forth in, described, granted, or reaffirmed by the New Bond Documents and New Security Documents and the Allowed Series 2002A Bonds shall continue to be governed by the terms, conditions, covenants, representations, and warranties set forth in the New Bond Documents.  Class 1 is impaired by the Plan and the holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan.

Pursuant to and in accordance with the New Bond Documents, the legal fees, expenses, costs, and other charges of the Bond Trustee shall be paid from the proceeds in the Debt Service Reserve Fund upon the Effective Date.

**4.2    Treatment of Class 2 Claims (Allowed Series 2002B Bonds).**  Each holder of an Allowed Series 2002B Bond shall have its Claim Allowed in an amount equal to all of its respective unpaid principal and accrued but unpaid interest, which in the aggregate for all Allowed Series 2002A Bonds is in the amount of $232,031.25.  The Allowed Series 2002B Bonds shall be paid pursuant to the terms and conditions of the New Bond Documents which

shall be amended and modified, to the extent necessary, to reflect the following terms of repayment:

    a.    Months 1-36, interest on the Allowed Series 2002B Bonds shall accrue at the rate of 2% and be paid monthly by the Debtor, which the Bond Trustee shall remit to the third party responsible for distributing payments under the Bonds to the holders thereof on a semi-annual basis.

    b.    Months 37 through May 1, 2039, interest on the Allowed Series 2002B Bonds shall accrue at the rate of 3% and the Debtor shall make monthly payments to the Bond Trustee, which the Bond Trustee shall remit to the third party responsible for distributing payments under the Bonds to the holders thereof on a semi-annual basis, of accrued but unpaid interest and principal (the principal on the Effective Date being equivalent to the amount of the Allowed Series 2002B Bonds) shall be amortized such that the Allowed Series 2002B Bonds shall be fully repaid by maturity, such monthly payments to the Bond Trustee being in the amount of $1,238.64.

    c.    The Surplus Revenues of the Debtor shall be used to first replenish the Debt Service Reserve Fund to an amount equal to the Debt Service Reserve Fund Cap, which such Debt Service Reserve Fund shall continue to be governed by and made subject to the terms and conditions of the New Bond Documents. Upon the funding of the Debt Service Reserve Fund in an amount equal to the Debt Service Reserve Fund Cap, and after the redemption or payment in full of the Allowed Series 2002A Bonds, the Surplus Revenues shall be used to redeem the Allowed Series 2002B Bonds, in whole or in part, at a redemption price equal to the principal amount being redeemed plus accrued interest to the redemption date.

The Allowed Series 2002B Bonds shall retain the pre-petition liens and security interests securing the Allowed Series 2002B Bonds as set forth in, described, granted, or reaffirmed by the New Bond Documents and New Security Documents and the Allowed Series 2002B Bonds shall continue to be governed by the terms, conditions, covenants, representations, and warranties set forth in the New Bond Documents. Class 2 is impaired by the Plan and the holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

    Pursuant to and in accordance with the New Bond Documents, the legal fees, expenses, costs, and other charges of the Bond Trustee shall be paid from the proceeds in the Debt Service Reserve Fund upon the Effective Date.

    **4.3    Treatment of Class 3 Claims (Allowed General Unsecured Claims)**. Gym Masters - $4,500.00. This Allowed Claim will be paid in full by a $2,500.00 commitment from Focus Bank. The remainder to be paid by P.A.C.E., a parent fund similar to the school's PTA. Since there is currently $6,202 on hand in the P.A.C.E. account, Debtor proposes to pay this debt in full on the Effective Date. Class 3 is unimpaired by the Plan.

## <u>ARTICLE V</u>

## MEANS FOR THE IMPLEMENTATION OF THE PLAN

In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

5.1    **Plan Funding**.  The Plan shall be funded by, and the Allowed Claims shall be paid by, the revenues generated by the Debtor from tuition and other fees paid by the students that attend the school owned and operated by the Debtor.

5.2    **Effectiveness of Plan Documents.**  On the Effective Date, all Plan Documents issued or entered into pursuant to the Plan, including, without limitation, (i) the New Bond Documents and New Security Documents and (ii) any agreement entered into or instrument issued or in connection with any of the foregoing or any other Plan Document, shall become effective and binding in accordance with their respective terms and conditions upon the Entities thereto and shall be deemed to become effective simultaneously.

5.3    **Continued Corporate Existence.**  On and after the Effective Date, the Debtor shall continue to exist as a corporation organized and existing under the laws of the State of Arkansas.

5.4    **Approval of Agreements**.  The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated by the Plan.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.

5.5    **Modification/Substitution of Bond Instruments.**  Commencing on the Effective Date, each existing Bond Instrument, or other instrument evidencing a Claim, shall, at the option of the Bond Trustee, be deemed amended and modified to incorporate the terms of repayment of the Allowed Bond Claims as set forth in Article IV, or cancelled and substituted with a new Bond Instrument that incorporates the terms of repayment of the Allowed Bond Claims as set forth in Article IV.

5.6    **New Bond Documents and New Security Documents; Further Transactions.**  On the Effective Date, the Debtor, the Issuer, and the Bond Trustee, as applicable, shall execute and deliver the New Bond Documents, New Security Documents, and, in accordance with Section 5.5, amend or modify each Bond Instrument, or cause to be issued a Bond Instrument in replacement and substitution therefore, in either case causing each Bond Instrument evidencing an entitlement to an Allowed Bond Claim to incorporate the terms of repayment of the Allowed Bond Claims as set forth in Article IV.  The Debtor shall likewise execute and deliver such documents, instruments and agreements as are necessary to grant to the Bond Trustee and/or the holders of the Allowed Bond Claims the Liens provided for thereunder.  On the Effective Date, the Debtor shall execute and deliver such further documents, instruments and agreements as are necessary to effectuate and further evidence the terms and conditions of the Plan.

      **5.7**     **Payment of Fees.**  All fees payable on or before the Effective Date (i) pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, and (ii) to the United States Trustee, shall be paid by the Debtor on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the Debtor.

<h1 style="text-align:center">ARTICLE VI</h1>

<h2 style="text-align:center">ACCEPTANCE OR REJECTION OF THE PLAN</h2>

      **6.1**     **Classes Entitled To Vote.**  Each Impaired Class of Claims or Interests that will (or may) receive or retain property or any interest in property under the Plan, *i.e.*, Classes 1 and 2 shall be entitled to vote to accept or reject the Plan.  By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

      **6.2**     **Acceptance By Impaired Classes.**  An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Except as provided in Section 1126(g) of the Bankruptcy Code with regard to Impaired Classes that are deemed to have rejected the Plan, an Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

      **6.3**     **Conditions to Acceptance by Classes 1 and 2.**  On behalf of the holders of Allowed Bond Claims, the Bond Trustee shall not be required to vote to accept the Plan on behalf of Classes 1 and 2 unless (a) the holders of Allowed Bond Claims provide or do not withhold their consent to the Plan in accordance with the Trust Indenture and (b) the Debtor establishes, to the satisfaction of the Bond Trustee, that the Debtor's expenses arising from or related to its 2014-2015 school year will be fully paid for and discharged by the Debtor's tuition revenues collected for the 2014-2015 school year.  Notwithstanding the forgoing, the Bond Trustee shall be entitled to accept the Plan on behalf of Classes 1 and 2 even if the requisite consent specified under the Trust Indenture has not been satisfied, provided that the Bond Trustee, in its reasonable discretion, believes the treatment afforded to Classes 1 and 2 under the Plan will be in the best interests of holders of Allowed Bond Claims.

      **6.4**     **Cramdown.**  The Debtor reserves the right to request confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.  The Debtor further reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE VII

## CONDITIONS TO THE EFFECTIVE DATE

**7.1    Conditions to Occurrence of the Effective Date.**  The following are conditions precedent to the occurrence of the Effective Date:

 a.    the Confirmation Order shall have been entered in form and substance satisfactory to the Bond Trustee, and no stay pending appeal shall be in effect;

 b.    no order of a court restraining the Debtor from consummating the Plan shall be in effect;

 c.    the Debtor shall have sufficient Cash to satisfy all Cash obligations under the Plan due on or as soon as reasonably practicable after the Effective Date; and

 d.    all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained, including, without limitation, the Bond Trustee having received the consent of the holders of the Bond Claims to the terms and conditions of the Plan and the treatment of the Allowed Bond Claims.

# ARTICLE VIII

## EFFECTS OF PLAN CONFIRMATION

**8.1    Binding Effect.**  Upon the entry of the Confirmation Order, but effective as of the Effective Date, and pursuant to Section 1141(a) of the Bankruptcy Code, the provisions of the Plan will bind the Debtor and all Creditors, including each of their respective heirs, legal representatives, successors and assigns, whether or not they accept the Plan.  The Claims and Distributions under the Plan to Creditors and holders of Interests are in full and complete settlement of all Claims and Interests.

**8.2    Existence of Debtor.**  The Debtor shall continue to exist after the Effective Date as a legal entity, with all the powers of a corporation under applicable law, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**8.3    Revesting and Vesting.**  Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to Sections 1123(a)(5) and 1141 of the Bankruptcy Code, all property comprising the Estate shall revest in the Debtor or its successors, free and clear of all Claims, Liens, charges, encumbrances and Interests of Creditors and Interest holders.  Except as otherwise provided in the Plan or in the Confirmation Order as of the Effective Date, the Debtor may operate its business and use, acquire and dispose of its property, without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code

or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Debtor may pay the charges it incurs for professional fees, disbursements, expenses, or related support services after the Effective Date without any application to the Bankruptcy Court.

## ARTICLE IX

## DISCHARGE, RELEASES, INJUNCTION AND INDEMNIFICATION

**9.1      Discharge of All Claims and Interests and Releases**.  Except as otherwise specifically provided by the Plan or in the Confirmation Order, entry of the Confirmation Order (subject to the occurrence of the Effective Date) acts as a discharge of all Claims against, Liens on, the Debtor, the Debtor's assets, and its respective properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of Claim therefor was filed or was deemed filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan or is entitled to receive a Distribution thereunder.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, subject to the occurrence of the Effective Date.

**9.2      Exculpation of the Debtor, the Bond Trustee, and Their Respective Agents. None of the Debtor, the Bond Trustee, nor any of their respective officers, members, directors, employees, representatives, attorneys, accountants, financial advisors, or agents who were or in the future are officers, members, directors, employees, representatives, attorneys, accountants, financial advisors, or agents, as the case may be, during the Bankruptcy Case or while this Plan is being administered shall have or incur any liability to any holder of a Claim, or to any other Entity for any post-Petition Date act or omission in connection with, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, or the property to be distributed under the Plan including, without limitation, failure to obtain confirmation of the Plan or to satisfy any condition or conditions, notwithstanding anything to the contrary in the New Bond Documents, the exercise by the Bond Trustee of its discretion, as set forth in Section 6.3, to accept the Plan on behalf of the holders of Allowed Bond Claims, or refusal to waive any condition or conditions, to the occurrence of the Effective Date; provided, however, that the foregoing shall not supersede the "safe harbor" from liability provided by Section 1125(e) of the Bankruptcy Code.**

## ARTICLE X

## ADMINISTRATIVE PROVISIONS

**10.1     Retention of Jurisdiction.**  Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

a.    Determine the allowance or disallowance of Claims and Interests and to enforce all causes of action which may exist on behalf of Debtor;

b.    Determine any and all disputes arising under or related to the First Amended Plan;

c.    Determine any and all applications, adversary proceedings and contests of litigated matters commenced in connection with the proceeding, both before and after the Confirmation Date; and

d.    Insure that the purpose and intent of the Plan is carried out, and for such other matters as may be proper.

**10.2    Other Courts of Competent Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of exercise shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**10.3    Modification of the Plan.**  The Plan may be modified in accordance with the provisions of the Bankruptcy Code and the applicable Bankruptcy Rules.

**10.4    Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entity.

**10.5    Governing Law.**  Except to the extent that federal law (including the Bankruptcy Code or Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Arkansas without giving effect to the principles of conflicts of laws thereof.

**10.6    Notices to Debtor.**  All notices, requests or demands for payments by parties in interest to the Debtor or the Debtor under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

For the Debtor:

Ridgefield Christian School, Inc.
3824 Casey Springs Rd.
Jonesboro, AR 72404

With copies to:

James F. Dowden, Attorney at Law
212 Center Street
Tenth Floor
Little Rock, AR 72201

Any of the above may, from time to time, change its address for future notices and other communications hereunder by filing a notice of the change of address with the Bankruptcy Court or by giving notice of the change of address in writing to Creditors and Interest holders.

**10.7   Severability.**  Except as to terms that would frustrate the overall purposes of the Plan, should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

**10.8   Interpretation, Rules of Construction, and Computation of Time**.

a.   The provisions of the Plan shall control over any descriptions thereof contained in the Disclosure Statement.

b.   Any term used in the Plan that is not defined in the Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules, as applicable.   Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.

c.   Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to Articles, Sections and Exhibits of or to the Plan.

d.   Any reference in the Plan to a contract, document, instrument, release, certificate, indenture or other agreement being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

e.   Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified or

supplemented as of the Effective Date without limitation to the provisions set forth in the Plan.

f.      Captions and headings to Articles and Sections in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

g.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

h.      All Exhibits and schedules to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

i.      Where applicable, references to the singular shall include the plural, and vice-versa, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter gender.

j.      The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

**10.9   No Admissions.**   Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

Dated:  May 28, 2015

Ridgefield Christian School, Inc.

James F. Dowden, P. A.

/s/ James F. Dowden_____
James F. Dowden (#77046)
212 Center St.; 10th Floor
Little Rock, AR 72201
(501) 324-4700  Phone
(501) 374-5463  Fax
jfdowden@swbell.net

**RIDGEFIELD CHRISTIAN SCHOOL**
**CASH FLOW PROJECTION**          <u>**Based on**</u>
**2015-2016 SCHOOL YEAR**          <u>**202 students**</u>

<u>**REVENUES**</u>

| | |
|---|---|
| Tuition income | $812,662.16 |
| <u>Fee income</u> | |
| Registration | $55,550.00 |
| Maintenance | $88,326.52 |
| <u>Miscellaneous income</u> | |
| Interest and dividends | $500.00 |
| Textbooks & Fees (Net)) | $3,000.00 |
| Aftercare | $2,000.00 |
| Misc. Income -Vending | $1,100.00 |
| Misc. Income -Late Fees | $2,800.00 |
| Hot Lunch, Milk | $3,000.00 |
| Miscellaneous income | $3,000.00 |
| Donations-Budget | $24,000.00 |
| Quiz and testing fees | $5,000.00 |
| Donations-Scholarships | $1,500.00 |
| PACE donations | $40,000.00 |
| **Total revenues** | **$1,042,438.68** |

<u>**EXPENSES**</u>

| | |
|---|---|
| Teachers salaries, benefits **and** | |
| Administrative salaries and benefits | $796,156.00 |
| | |
| <u>General and administrative expenses</u> | |
| Debt service (P&I) | $78,597.60 |
| Advertising | $4,000.00 |
| Bank Charges | $3,800.00 |
| School Insurance | $29,000.00 |
| Professional fees | $8,700.00 |
| Dues and Subscriptions | $310.00 |
| Telephone | $4,400.00 |
| Miscellaneous expenses | $450.00 |
| ANSAA accreditation exp. | $1,400.00 |
| Maintenance & Repairs | $22,000.00 |
| Utilities | $40,500.00 |
| Training & Conferences | $1,000.00 |
| Pest control | $1,900.00 |
| Computer Maintenance | $9,000.00 |
| Copier maintenance | $5,600.00 |
| Christmas bonuses paid by PACE | $3,337.00 |
| Lawncare | $1,200.00 |
| Trash pickup | $2,700.00 |
| Janitorial supplies | $6,000.00 |
| Office supplies | $4,500.00 |
| Postage | $2,100.00 |
| Classroom supplies | $4,000.00 |
| Graduation expense - Sr. High | $700.00 |
| Graduation expense - Kindergarten | $100.00 |
| Graduation expense - 6th gr. | $100.00 |
| Awards & Honors | $300.00 |
| Travel Expenses | $3,500.00 |
| Student Testing | $2,000.00 |
| Student competition | $400.00 |
| Total Operating Expenses | <u>$1,037,750.60</u> |
| **Revenues in excess of expenses** | **$4,688.08** |

01/30/15                 **Statement of Activities - Ridgefield Christian School**                 Page: 1

Sort = 3. Fund & Program & Category                 **January, 2015 - General**                 Print Date: 01/30/15, 9:20:31 AM

| | January Actual | Year to Date Actual | Annual Budget | Last Year Ann. Budget |
|---|---|---|---|---|
| ***Income:*** | | | | |
| *General* | | | | |
| **General Operations** | | | | |
| **Tuition Income** | | | | |
| 3000.00 Tuition Income | 105,380.10 | 592,973.78 | 784,533.56 | 843,166.98 |
| 3030.00 Referral discounts | 0.00 | 0.00 | 0.00 | 0.00 |
| 3036.00 College Course Tuition | 0.00 | 0.00 | 0.00 | 0.00 |
| 3039.00 Distance learning income | 0.00 | 0.00 | 0.00 | 2,100.00 |
| 3100.02 Maintenance Fee Income | 9,861.90 | 66,383.54 | 84,893.15 | 83,876.00 |
| 3100.04 Registration Fees (K-12) | 1,000.00 | 57,394.51 | 54,879.00 | 52,075.00 |
| 4330.00 Aftercare | 168.00 | 655.28 | 2,400.00 | 2,400.00 |
| Total for Tuition Income | 116,410.00 | 717,407.11 | 926,705.71 | 983,617.98 |
| **Donation Income** | | | | |
| 3029.00 Unrealized gain/loss inve | (1,200.00) | (2,004.00) | 0.00 | 0.00 |
| 3200.01 Donation Income (Budge | 1,271.64 | 14,807.70 | 23,000.00 | 26,000.00 |
| 3200.03 Donation Income (Schola | 125.00 | 875.00 | 1,500.00 | 1,500.00 |
| 3200.04 Non-Cash Donations Oth | 0.00 | 3,011.31 | 0.00 | 0.00 |
| 3200.05 Donations-Capital Campa | 0.00 | 0.00 | 0.00 | 0.00 |
| 3200.06 Grant Proceeds | 0.00 | 0.00 | 0.00 | 0.00 |
| Total for Donation Income | 196.64 | 16,690.01 | 24,500.00 | 27,500.00 |
| **Other Income** | | | | |
| 3027.00 Quiz and Testing Fee Inc | 0.00 | 5,500.00 | 5,050.00 | 7,933.00 |
| 3035.00 Misc. Income | 0.00 | 877.21 | 4,000.00 | 11,650.00 |
| 3042.00 Warrior Night - net | 0.00 | 0.00 | 0.00 | 0.00 |
| 3043.00 Alumni Association incor | 0.00 | 0.00 | 0.00 | 0.00 |
| 3900.01 Invest. Inc. (Div. and Int. | 0.00 | 229.07 | 1,000.00 | 1,800.00 |
| 3900.02 Textbooks & Fees (Net) | 290.85 | 3,916.78 | 4,000.00 | 5,500.00 |
| 3900.90 Excess Activity Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| 3900.96 Disposal of Fixed Assets | 0.00 | 0.00 | 0.00 | 0.00 |
| 3900.97 Misc. Income - Vending | 198.92 | 530.88 | 1,100.00 | 1,100.00 |
| 3900.98 Contributed/Volunteer T | 0.00 | 325.00 | 0.00 | 0.00 |

01/30/15        **Statement of Activities - Ridgefield Christian School**        Page: 2

Sort = 3. Fund & Program & Category

### January, 2015 - General

Print Date: 01/30/15, 9:20:31 AM

| | January Actual | Year to Date Actual | Annual Budget | Last Year Ann. Budget |
|---|---|---|---|---|
| 3900.99  Misc. Income - Late Fees | 200.00 | 276.11 | 2,800.00 | 2,600.00 |
| 3910.00  Hot lunch and Milk - Net | 4,299.75 | 16,828.03 | 3,000.00 | 6,000.00 |
| Total for Other Income | 4,989.52 | 28,483.08 | 20,950.00 | 36,583.00 |
| Total for General Operations | 121,596.16 | 762,580.20 | 972,155.71 | 1,047,700.98 |
| **PACE** | | | | |
| **Donation Income** | | | | |
| 3002.00  Non-cash Donations PACE | 0.00 | 0.00 | 0.00 | 0.00 |
| 3003.00  Donation Income (PACE | 0.00 | 20,589.69 | 40,000.00 | 45,000.00 |
| Total for Donation Income | 0.00 | 20,589.69 | 40,000.00 | 45,000.00 |
| Total for PACE | 0.00 | 20,589.69 | 40,000.00 | 45,000.00 |
| *General* | 121,596.16 | 783,169.89 | 1,012,155.71 | 1,092,700.98 |
| **Total Income** | 121,596.16 | 783,169.89 | 1,012,155.71 | 1,092,700.98 |

### *Expense:*

*General*

**PreKindergarten**

**Faculty Salaries and Expenses**

| | January Actual | Year to Date Actual | Annual Budget | Last Year Ann. Budget |
|---|---|---|---|---|
| 4000.01  Payroll Exp. (PreK) | 4,391.66 | 24,154.13 | 52,700.00 | 51,900.00 |
| 4001.01  Stipend - Pre-K | 25.00 | 137.50 | 300.00 | 300.00 |
| 4002.01  Aftercare Wages | 293.76 | 1,616.90 | 2,581.00 | 3,227.00 |
| 4200.01  PR Tax Exp. (PreK) | 360.35 | 1,968.98 | 4,055.00 | 3,993.00 |
| al for Faculty Salaries and Expenses | 5,070.77 | 27,877.51 | 59,636.00 | 59,420.00 |
| Total for PreKindergarten | 5,070.77 | 27,877.51 | 59,636.00 | 59,420.00 |
| **Elementary (K-6)** | | | | |
| **Faculty Salaries and Expenses** | | | | |
| 4000.02  Payroll Exp. (Elementary | 18,883.47 | 105,289.98 | 199,924.00 | 200,888.00 |
| 4000.04  Stipend - Elementary | 0.00 | 0.00 | 0.00 | 0.00 |
| 4200.02  Payroll Tax Expense (Ele | 1,500.24 | 8,449.40 | 15,294.00 | 15,368.00 |
| al for Faculty Salaries and Expenses | 20,383.71 | 113,739.38 | 215,218.00 | 216,256.00 |
| Total for Elementary (K-6) | 20,383.71 | 113,739.38 | 215,218.00 | 216,256.00 |

01/30/15          **Statement of Activities - Ridgefield Christian School**          Page: 3

**January, 2015 - General**

Sort = 3. Fund & Program & Category                                                                    Print Date: 01/30/15, 9:20:31 AM

| | January Actual | Year to Date Actual | Annual Budget | Last Year Ann. Budget |
|---|---|---|---|---|
| **Secondary (7-12)** | | | | |
| **Faculty Salaries and Expenses** | | | | |
| 4000.03  Payroll Exp. (Secondary) | 19,218.91 | 110,057.86 | 249,676.00 | 236,917.00 |
| 4000.05  Stipend - Secondary | 934.96 | 6,242.26 | 12,200.00 | 17,950.00 |
| 4200.03  Payroll Tax Expense (Se | 1,465.94 | 8,361.04 | 20,033.00 | 19,497.00 |
| al for Faculty Salaries and Expenses | 21,619.81 | 124,661.16 | 281,909.00 | 274,364.00 |
| Total for Secondary (7-12) | 21,619.81 | 124,661.16 | 281,909.00 | 274,364.00 |
| **Administration** | | | | |
| **Faculty Salaries and Expenses** | | | | |
| 4001.00  Payroll Exp.( Substitutes | 948.75 | 5,670.50 | 15,500.00 | 15,500.00 |
| 4200.00  Payroll Tax Expense | 72.61 | 433.13 | 1,186.00 | 1,186.00 |
| al for Faculty Salaries and Expenses | 1,021.36 | 6,103.63 | 16,686.00 | 16,686.00 |
| **Administration** | | | | |
| 4100.06  G&A Payroll Exp.(Aide) | 1,537.18 | 8,207.51 | 8,226.00 | 10,077.00 |
| 4100.10  G & A Payroll Exp. (Nur | 0.00 | 0.00 | 0.00 | 0.00 |
| 4200.09  Contributed/Volunteer T | 0.00 | 325.00 | 0.00 | 0.00 |
| 4200.11  Contributed/Materials-Su | 0.00 | 3,011.31 | 0.00 | 0.00 |
| 4451.00  Insurance - Health Benef | 500.00 | 3,500.00 | 6,000.00 | 6,000.00 |
| Total for Administration | 2,037.18 | 15,043.82 | 14,226.00 | 16,077.00 |
| Total for Administration | 3,058.54 | 21,147.45 | 30,912.00 | 32,763.00 |
| **General Operations** | | | | |
| **Faculty Salaries and Expenses** | | | | |
| 4100.01  G&A Payroll Exp.(Admi | 4,333.32 | 30,333.24 | 52,000.00 | 52,000.00 |
| 4100.02  G&A Payroll Exp.(Secre | 1,690.58 | 11,834.06 | 20,287.00 | 19,890.00 |
| 4100.03  G&A Payroll Exp. (Acco | 2,398.66 | 16,790.62 | 28,784.00 | 23,961.00 |
| 4100.04  G&A Payroll Exp. (Janit | 2,781.60 | 19,664.05 | 33,344.00 | 34,053.00 |
| 4100.05  G&A Payroll Exp. (Coun | 2,295.00 | 16,065.00 | 27,540.00 | 27,000.00 |
| 4100.07  G&A PR Exp.(As. Adm) | 0.00 | 0.00 | 0.00 | 0.00 |
| 4100.08  G&A PR Exp.(Lunch) | 0.00 | 0.00 | 4,362.00 | 4,362.00 |
| 4100.12  G&A Payroll Exp. (Rece | 1,382.90 | 7,605.95 | 16,595.00 | 16,270.00 |
| 4200.04  Payroll Tax Expense (G& | 1,235.15 | 8,553.62 | 14,820.00 | 14,601.00 |

01/30/15 **Statement of Activities - Ridgefield Christian School** Page: 4

**January, 2015 - General**

Sort = 3. Fund & Program & Category

Print Date: 01/30/15, 9:20:31 AM

| | January<br>Actual | Year to Date<br>Actual | Annual<br>Budget | Last Year<br>Ann. Budget |
|---|---|---|---|---|
| 4200.10  Staff Bonuses | 0.00 | 3,226.99 | 3,337.00 | 3,500.00 |
| al for Faculty Salaries and Expenses | 16,117.21 | 114,073.53 | 201,069.00 | 195,637.00 |
| **Administration** | | | | |
| 4016.00  Bad Debt Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| 4023.00  Technology Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| 4029.00  Warrior Night expense | 0.00 | 0.00 | 0.00 | 0.00 |
| 4030.00  Alumni Asociation exper | 0.00 | 0.00 | 0.00 | 0.00 |
| 4300.00  Advertising | 0.00 | 475.16 | 4,000.00 | 2,000.00 |
| 4360.00  Bank Charges | 193.86 | 2,726.73 | 3,800.00 | 2,800.00 |
| 4420.00  Depreciation Expense | 0.00 | 38,851.02 | 0.00 | 0.00 |
| 4425.00  Amortization-Bond Disco | 0.00 | 1,257.36 | 0.00 | 0.00 |
| 4450.00  Insurance | 5,528.75 | 22,003.25 | 29,000.00 | 28,000.00 |
| 4480.00  Interest Expense | 0.00 | 26,013.03 | 122,782.52 | 125,815.84 |
| 4690.00  Professional Fees | 2,185.72 | 12,645.27 | 8,700.00 | 9,000.00 |
| 4692.00  ANSAA | 0.00 | 1,327.00 | 1,400.00 | 1,500.00 |
| 4780.00  Dues & Subscriptions | 50.00 | 95.00 | 310.00 | 330.00 |
| 4810.00  Telephone | 365.18 | 2,556.24 | 4,400.00 | 4,300.00 |
| 4870.00  Training & Conferences | 0.00 | 281.88 | 1,000.00 | 1,500.00 |
| 4900.00  Utilities | 3,734.36 | 21,820.36 | 40,500.00 | 37,500.00 |
| 4905.00  Bldg. Rent/Lease | 0.00 | 0.00 | 0.00 | 0.00 |
| 4999.00  Miscellaneous Expenses | (141.33) | 645.97 | 450.00 | 700.00 |
| Total for Administration | 11,916.54 | 130,698.27 | 216,342.52 | 213,445.84 |
| **Building Maintenance and Utilities** | | | | |
| 4570.00  Maintenance & Repairs | 728.37 | 14,926.29 | 21,000.00 | 20,000.00 |
| 4570.01  Pest Control | 98.10 | 1,257.88 | 1,900.00 | 1,900.00 |
| 4570.02  Computer Maintenance | 1,276.40 | 5,722.28 | 9,000.00 | 8,600.00 |
| 4570.03  Copier Maintenance | 502.07 | 3,274.80 | 5,600.00 | 7,200.00 |
| 4570.04  Lawncare | 0.00 | 75.72 | 1,200.00 | 700.00 |
| 4570.05  Janitorial Supplies | 427.40 | 4,791.74 | 6,000.00 | 9,500.00 |
| 4570.06  Contrib. Time- Maint.& l | 0.00 | 0.00 | 0.00 | 0.00 |
| 4570.07  Computer Software/Licer | 0.00 | 0.00 | 0.00 | 0.00 |
| 4900.01  Trash pickup | 220.68 | 1,576.49 | 2,700.00 | 2,500.00 |
| Building Maintenance and Utilities | 3,253.02 | 31,625.20 | 47,400.00 | 50,400.00 |

01/30/15          **Statement of Activities - Ridgefield Christian School**          Page: 5

Sort = 3. Fund & Program & Category                **January, 2015 - General**                Print Date: 01/30/15, 9:20:31 AM

|  | January Actual | Year to Date Actual | Annual Budget | Last Year Ann. Budget |
|---|---|---|---|---|
| **Office Supplies** | | | | |
| 4630.00  Office Supplies | 305.10 | 3,112.20 | 4,500.00 | 4,500.00 |
| 4660.00  Postage | 0.00 | 860.67 | 2,100.00 | 3,000.00 |
| Total for Office Supplies | 305.10 | 3,972.87 | 6,600.00 | 7,500.00 |
| **Classroom Expenses** | | | | |
| 4025.00  College Course Tuition E | 0.00 | 0.00 | 0.00 | 0.00 |
| 4027.00  Distance Learning Expen | 0.00 | 0.00 | 0.00 | 258.00 |
| 4390.00  Classroom Supplies and I | 0.00 | 1,485.56 | 4,000.00 | 5,000.00 |
| 4391.01  Grant Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| 4556.00  Grad. Expenses - Sr. Hig | 0.00 | 0.00 | 700.00 | 700.00 |
| 4556.01  Grad. Expenses - Kinderg | 0.00 | 0.00 | 100.00 | 100.00 |
| 4556.02  Grad. Expenses - 6th Gra | 0.00 | 0.00 | 100.00 | 100.00 |
| 4557.00  Awards & Honors | 0.00 | 0.00 | 300.00 | 300.00 |
| 4751.00  Student Competition | 0.00 | 380.00 | 400.00 | 500.00 |
| 4752.00  Student Testing | 0.00 | 13.00 | 2,000.00 | 2,500.00 |
| 4754.00  Travel Expenses | 0.00 | 1,043.60 | 3,500.00 | 4,000.00 |
| Total for Classroom Expenses | 0.00 | 2,922.16 | 11,100.00 | 13,458.00 |
| Total for General Operations | 31,591.87 | 283,292.03 | 482,511.52 | 480,440.84 |
| *General* | 81,724.70 | 570,717.53 | 1,070,186.52 | 1,063,243.84 |
| ***Total Expense*** | 81,724.70 | 570,717.53 | 1,070,186.52 | 1,063,243.84 |
| ***Income - Expense*** | 39,871.46 | 212,452.36 | (58,030.81) | 29,457.14 |